ARLINGTON LUMBER COMPANY v. STETSON.

The exceptions to the rulings of the court upon the demurrers to the amendment to the defendant's answer were without merit, and the verdict of the jury was demanded under the evidence.

SEPTEMBER 23, 1916.

Complaint. Before Judge Cox. Calhoun superior court. August 7, 1915.

*Pope & Bennet,* for plaintiff in error.

*Hardeman, Jones, Park & Johnston* and *B. W. Fortson,* contra.

BECK, J. J. P. Stetson brought suit against the Arlington Lumber Company, alleging that it was indebted to him in a named sum on a certain contract, by reason of the following facts: On the 23d day of June, 1910, the Stetson Lumber Company owed the Bank of Arlington two notes for $1,000 each, upon which the plaintiff and J. M. Mathews were indorsers. Stetson and Mathews were stockholders of the Stetson Lumber Company. On that day the Arlington Lumber Company made a contract with the Bank of Arlington, reciting this indebtedness; and also reciting that the Stetson Lumber Company transferred its stock of merchandise in its commissary to the Arlington Lumber Company upon the agreement that if the Arlington Lumber Company should be able to retain the title to this stock as against creditors of the Stetson Lumber Company, the Arlington Company would assume

and pay to the Bank of Arlington these two notes of $1,000 each.
After so reciting, the contract states the agreement of the Arlington
Company to pay these notes to the Bank of Arlington, pro-
vided it can hold the stock as against the creditors of the Stetson
Lumber Company for a period of twelve months. The Arlington
Lumber Company paid one of the notes, but failed to pay the other.
The Bank of Arlington then sued the Stetson Lumber Company
and J. P. Stetson and J. M. Mathews, and obtained judgment for
the amount of the other note, with interest and attorney's fees.
An execution was issued upon the judgment, and was paid by
and duly transferred to Stetson. The contract between the Ar-
lington Lumber Company and the Bank of Arlington was also
transferred to him.

The defendant filed an answer denying generally the essential
allegations of the petition. Subsequently it offered an amend-
ment to the answer, setting up the contention that the contract
relied upon as the basis of the suit was on its face ambiguous, and
insisting that it should be allowed to explain the ambiguities by
reference to certain writings executed at the same time with the
contract sued on, and by showing certain stipulations and agree-
ments between the parties resting in parol. It was further insisted
that if the document which was the basis of the suit should be
given the construction contended for by the plaintiff, it did not
speak the intention of the parties, and should be reformed. The
court struck the parts of the amendment wherein the defendant
sought to show ambiguities by parol evidence, and prayed for
reformation of the paper, but allowed the parts to stand that set
up that the ambiguities would appear from a consideration of the
instrument sued on and the other writings referred to, and further
allowed certain portions of the answer to remain which were sup-
ported by the terms of the contract sued on. Upon the trial a
verdict was rendered in favor of the plaintiff for the amount of the
note that had been paid by him after it was reduced to judgment.

We are of the opinion that this verdict was the only legally pos-
sible one under the law and the facts of the case. The theory of
the defendant that the Arlington Lumber Company was merely a
guarantor is untenable, in view of the writing sued on and the
facts of the case. Considering merely the terms of the writing,
there does appear some ambiguity, especially when we dwell upon

the words, "or so much of said notes as may remain unpaid at the end of the period mentioned," which appear twice in the contract after the agreement upon the part of the Arlington Lumber Company that it will pay to the Bank of Arlington the two notes of the Stetson Lumber Company for $1,000 each, if the Arlington Lumber Company shall be able to retain the title to the stock of merchandise purchased from the Stetson Lumber Company. But when we consider all the facts which appear from the pleadings and the evidence, the ambiguity is removed. The Stetson Lumber Company, on the date of the contract sued on, in writing conveyed to the Arlington Lumber Company all of its property except the merchandise in the commissary; and it is inferable that this would have been included in the general conveyance, if it had not been apprehended that the sale and transfer of this merchandise might be obnoxious to the statute against the sale of stocks of merchandise in bulk, as there had not been a compliance with the regulations of the law relating to such sales. Consequently an independent contract as to the sale of the stock of goods was made, and that provided for the payment of the price of the stock of goods, not to the vendor, but to the Bank of Arlington, which held two notes given by the Stetson Lumber Company to the Bank of Arlington, indorsed by J. P. Stetson and J. M. Mathews, who owned the capital stock of the vendor company. These notes were due before the expiration of twelve months after the sale of the commissary stock of goods. It must have been in the contemplation of the Stetson Company and the Arlington Company that these notes might be paid, or a part of them, by the Stetson Lumber Company before the expiration of twelve months. In that case the Arlington Lumber Company would, of course, have to pay to the Bank of Arlington only such sums as might remain due upon the notes. The contract bound the vendees to pay the notes of the Stetson Lumber Company, or so much thereof as the vendors owed on them. Instead of paying or contracting to pay the purchase-money of the stock of goods directly to the Stetson Lumber Company, the Arlington Lumber Company agreed to pay directly to the bank so much of the purchase-money as was equivalent to the Stetson Lumber Company's indebtedness to the bank, evidenced by these notes, if the possession of the stock of goods was not disturbed within twelve months from the date of the contract.

There was no attempt made by any of the creditors to upset the sale, and the liability of the Arlington Lumber Company to pay the amount due on the notes became absolute.

The court did not err in striking the paragraphs of the amendment seeking a reformation of the instrument sued on. There was no such showing of fraud or mistake, or as to what was omitted from the contract, as to authorize a reformation of the paper.

*Judgment affirmed. All the Justices concur, except Gilbert J., not presiding.*